IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| CLARENCE DAVIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 2:14-CV-946-WKW |
| | ) | [WO] |
| NURSE GILES and NURSE TURNER, | ) | |
| | ) | |
| Defendants. | ) | |

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

**I.  INTRODUCTION**

This 42 U.S.C. § 1983 action is before the court on a complaint filed by Clarence

Davis ("Davis"), a former state inmate, in which he challenges the adequacy of medical

treatment provided to him in 2014 during his confinement at the Staton Correctional

Facility.  Davis seeks monetary compensation for the alleged violation of his

constitutional rights. Doc. 1 at 4.

Defendant Giles[1] filed a special report and relevant evidentiary materials in

support of her report, including an affidavit and certified copies of Davis' medical

records.   In the report and affidavit, Giles denies that she acted with deliberate

indifference to Davis' medical needs.  After receipt of Nurse Giles' special report, the

court issued an order directing Davis to respond to each of the arguments set forth in the

report with the support of affidavits or statements made under penalty of perjury and

---

[1] The plaintiff lists "Nurse Jiles" as a defendant.  It is undisputed that the true name of Nurse Jiles is Mary
Giles. Docs. 9 at 1 & 9-1 at 1.  For purposes of this Recommendation and in the interest of clarity, the
court will identify this defendant as Nurse Giles.

other evidentiary materials. Doc. 13 at 3.  The order specifically cautioned that "unless within ten (10) days from the date of this order a party . . . presents sufficient legal cause why such action should not be undertaken . . . the court may at any time [after expiration of the time for the plaintiff filing a response to this order] and without further notice to the parties (1) treat the special report and any supporting evidentiary materials as a motion for summary judgment and (2) after considering any response as allowed by this order, rule on the motion for summary judgment in accordance with the law." Doc. 13 at 4.  Davis filed a response to this order on November 24, 2014 addressing the exhaustion defense raised by Nurse Giles.[2] Doc. 14.  On January 8, 2015, Davis filed a statement under penalty of perjury in opposition to the remaining arguments set forth by Nurse Giles in her report.[3] Doc. 19.

Pursuant to the court's order requiring a response from the plaintiff, the court now treats Nurse Giles' report as a motion for summary judgment and concludes that summary judgment is due to be granted in her favor.  Furthermore, the court recommends

---

[2] Davis asserts he did, in fact, file a grievance addressing the treatment received from Nurse Giles in May of 2014 and maintains he has no documentation to show submission of a grievance because he lacked the ability to copy the form. Doc. 14 at 1.  Davis also speculates that medical personnel may have simply placed his grievance in the trash and, therefore, implores the court to address the merits of his claim against Nurse Giles. Doc. 14 at 1.  The defendant disputes the allegations made by Davis regarding exhaustion. Doc. 18.  Under the circumstances of this case, the court will address the merits of the claim presented by Davis against Nurse Giles.

[3] Davis' affidavit is replete with hearsay from medical personnel that the antibiotic ointment provided to him on May 30, 2014 caused an allergic reaction and worsening an infection of his wound.  The court will not consider this inadmissible hearsay when ruling on the pending motion for summary judgment as it is offered for the truth of the matter asserted and there is nothing in the record to indicate that the hearsay would be reducible to admissible form at trial. *Macuba v. Deboer*, 193 F.3d 1316, 1324–25 (11th Cir. 1999).  Even if this evidence could be used, it would not impact the court's decision on the issue of deliberate indifference.  Moreover, the medical records reveal no reference to any allergic reaction to the ointment.

that Nurse Turner be dismissed as a defendant in this cause of action because service has

not been perfected on him or her.

## II.  SUMMARY JUDGMENT STANDARD

"Summary judgment is appropriate 'if the pleadings, depositions, answers to

interrogatories, and admissions on file, together with the affidavits, if any, show there is

no genuine [dispute] as to any material fact and that the moving party is entitled to

judgment as a matter of law.'" *Greenberg v. BellSouth Telecomm., Inc.*, 498 F.3d 1258,

1263 (11th Cir. 2007) (per curiam); Fed. R. Civ. P. Rule 56(a) ("The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any

material fact and the movant is entitled to judgment as a matter of law.").  The party

moving for summary judgment "always bears the initial responsibility of informing the

district court of the basis for its motion, and identifying those portions of the [record,

including pleadings, discovery materials and affidavits], which it believes demonstrate

the absence of a genuine issue [dispute] of material fact." *Celotex Corp. v. Catrett*, 477

U.S. 317, 323 (1986); *Jeffery v. Sarasota White Sox, Inc.*, 64 F.3d 590, 593 (11th Cir.

1995) (holding that moving party has initial burden of showing there is no genuine

dispute of material fact for trial).  The movant may meet this burden by presenting

evidence indicating there is no dispute of material fact or by showing that the nonmoving

party has failed to present appropriate evidence in support of some element of its case on

which it bears the ultimate burden of proof. *Celotex*, 477 U.S. at 322–24; *Moton v.

Cowart*, 631 F.3d 1337, 1341 (11th Cir. 2011) (holding that the movant discharges its

burden by showing that the record lacks evidence to support the nonmovant's case or that the nonmovant would be unable to prove its case at trial).

Nurse Giles has met her evidentiary burden. Thus, the burden shifts to the plaintiff to establish, with appropriate evidence beyond the pleadings, that a genuine dispute material to his case exists. *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991); *Celotex*, 477 U.S. at 324; Fed. R. Civ. P. 56(e)(3); *Jeffery*, 64 F.3d at 593–94 (holding that, once a moving party meets its burden, "the non-moving party must then go beyond the pleadings, and by its own affidavits [or statements made under penalty of perjury], or by depositions, answers to interrogatories, and admissions on file," demonstrate that there is a genuine dispute of material fact). This court will also consider "specific facts" pled in a plaintiff's sworn complaint when considering his opposition to summary judgment. *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1098 (11th Cir. 2014). A genuine dispute of material fact exists when a party produces evidence that would allow a reasonable factfinder to return a verdict in its favor. *Greenberg*, 498 F.3d at 1263; *Allen v. Bd. of Pub. Educ. for Bibb Cnty.*, 495 F.3d 1306, 1313 (11th Cir. 2007). "The mere existence of some factual dispute will not defeat summary judgment unless that factual dispute is material to an issue affecting the outcome of the case." *McCormick v. City of Fort Lauderdale*, 333 F.3d 1234, 1243 (11th Cir. 2003) (citation omitted). "[T]here must exist a conflict in substantial evidence to pose a jury question." *Hall v. Sunjoy Indus. Group, Inc.*, 764 F. Supp. 2d 1297, 1301 (M.D. Fla. 2011) (citation omitted).

Although factual inferences must be viewed in a light most favorable to the plaintiff and *pro se* complaints are entitled to liberal interpretation, a *pro se* litigant does not escape the burden of establishing by sufficient evidence a genuine dispute of material fact. *See Beard v. Banks*, 548 U.S. 521, 525 (2006); *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).  Thus, Davis's *pro se* status alone does not compel this court to disregard elementary principles of production and proof in a civil case.

The court has undertaken a thorough and exhaustive review of the evidence contained in the record.  After this review, the court finds that Davis has failed to demonstrate a genuine dispute of material fact in order to preclude entry of summary judgment in favor of Nurse Giles.  In addition, the court recommends the dismissal of Nurse Turner because Davis failed to identity this individual properly and service could not be perfected on him or her.

### III.  DISMISSAL OF NURSE TURNER

The court attempted service on Nurse Turner, a nurse identified by Davis as having been employed at the Staton Health Care Unit during the time relevant to the complaint.  Counsel for Nurse Giles, who also serves as counsel for the medical care provider for the state prison system, filed a notice informing the court that he was "unable to identify any 'Nurse Turner' as being employed at Staton Correctional Facility at the time of the alleged incident." Doc. 7 at 1.  Upon receipt of this Notice, the court entered an order advising Davis of the information provided by defense counsel and requiring that "on or before October 17, 2014 [he] . . . properly identify 'Nurse Turner' so that she

may be served." Doc. 8.   The order specifically cautioned Davis that "if he does not provide a proper name for 'Nurse Turner' so that service can be properly perfected, 'Nurse Turner' will not be considered a party to this cause of action, the court will on its own initiative dismiss the claims against Nurse Turner and this case will proceed only against Nurse [G]iles." Doc. 8.

Davis did not file a response to this order within the prescribed time period.   The court therefore issued a second order regarding the necessity of identifying Nurse Turner for the purpose of proceeding on the claims lodged against him or her.   In this order, the court ordered Davis to "show cause why he has failed to properly identify 'Nurse Turner' in compliance with the directives of the order entered on October 2, 2014." Doc. 12.  The court again cautioned Davis that his failure to provide a proper name for "Nurse Turner" would result in the dismissal of this individual as a party to this case. Doc. 12.

As of the date of this Recommendation, Davis has filed no response to the orders seeking the true identity of Nurse Turner.   The court therefore concludes that Nurse Turner is due to be dismissed as a party to this cause of action. *See* Fed. R. Civ. P. 4(m) (requiring that, absent good cause, when "a defendant is not served within 90 days after the complaint is filed, the court . . . must dismiss the action without prejudice against that defendant").[4]  Pursuant to Rule 4(m), the court recommends Nurse Turner's dismissal for failure to perfect service upon him or her in the two-and-a-half years of the pendency of this lawsuit and after notice to Davis of this deficiency.

---

[4] The version of Rule 4(m) in existence upon the initiation of Davis' lawsuit allowed for service within 120 days, but the rule has since been amended to shorten that timeframe to 90 days.  Davis' failure to perfect service is well beyond either time limit.

### IV.  SUMMARY JUDGMENT REGARDING NURSE GILES

Davis complains that Nurse Giles denied him proper treatment for a lingering wound on his right side.  Specifically, Davis asserts that Giles mishandled his treatment during a sick-call evaluation on May 30, 2014 when she provided him "B triple antibiotic ointment" that irritated his wound. Doc. 1 at 3.  Nurse Giles denies that she acted with deliberate indifference to Davis' medical needs and, instead, maintains that the treatment provided to Davis occurred in an effort to "treat [his] wound and resolve any potential infection." Doc. 9-1 at 10.

To prevail on a claim concerning an alleged denial of medical treatment, an inmate must—at a minimum—show that the defendant acted with deliberate indifference to a serious medical need. *Estelle v. Gamble*, 429 U.S. 97 (1976); *Taylor v. Adams*, 221 F.3d 1254 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248 (11th Cir. 1999); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989).  Medical personnel may not subject an inmate to "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle*, 429 U.S. at 106; *Adams v. Poag*, 61 F.3d 1537, 1546 (11th Cir. 1995) (holding, as directed by *Estelle*, that a plaintiff must establish "not merely the knowledge of a condition, but the knowledge of necessary treatment coupled with a refusal to treat or a delay in [the acknowledged necessary] treatment").

Within the Eleventh Circuit, medical malpractice and negligence do not equate to deliberate indifference:

> That medical malpractice—negligence by a physician—is insufficient to
> form the basis of a claim for deliberate indifference is well settled. *See*

> *Estelle v. Gamble,* 429 U.S. 97, 105–07, 97 S. Ct. 285, 292, 50 L.Ed.2d 251 (1976); *Adams v. Poag,* 61 F.3d 1537, 1543 (11th Cir. 1995). Instead, something more must be shown. Evidence must support a conclusion that a prison [medical care provider's] harmful acts were intentional or reckless. *See Farmer v. Brennan,* 511 U.S. 825, 833–38, 114 S. Ct. 1970, 1977–79, 128 L.Ed.2d 811 (1994); *Cottrell v. Caldwell,* 85 F.3d 1480, 1491 (11th Cir. 1996) (stating that deliberate indifference is equivalent of recklessly disregarding substantial risk of serious harm to inmate); *Adams,* 61 F.3d at 1543 (stating that plaintiff must show more than mere negligence to assert an Eighth Amendment violation); *Hill v. DeKalb Regional Youth Detention Ctr.,* 40 F.3d 1176, 1191 n. 28 (11th Cir. 1994) (recognizing that Supreme Court has defined "deliberate indifference" as requiring more than mere negligence and has adopted a "subjective recklessness" standard from criminal law); *Qian v. Kautz,* 168 F.3d 949, 955 (7th Cir. 1999) (stating "deliberate indifference" is synonym for intentional or reckless conduct, and that "reckless" conduct describes conduct so dangerous that deliberate nature can be inferred).

*Hinson v. Edmond*, 192 F.3d 1342, 1345 (11th Cir. 1999).

In order to establish "deliberate indifference to [a] serious medical need . . . , Plaintiff[] must show: (1) a serious medical need; (2) the defendants' deliberate indifference to that need; and (3) causation between that indifference and the plaintiff's injury." *Mann v. Taser Int'l, Inc.*, 588 F.3d 1291, 1306–07 (11th Cir. 2009). When seeking relief based on deliberate indifference, an inmate is required to show "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor*, 221 F.3d at 1258; *McElligott*, 182 F.3d at 1255 (holding that, for liability to attach, the official must know of and then disregard an excessive risk of harm to the prisoner). Regarding the objective component of a deliberate indifference claim, the plaintiff must first show "an objectively 'serious medical need[]' . . . and second, that

the response made by [the defendant] to that need was poor enough to constitute 'an unnecessary and wanton infliction of pain,' and not merely accidental inadequacy, 'negligen[ce] in diagnos[is] or treat[ment],' or even '[m]edical malpractice' actionable under state law." *Taylor*, 221 F.3d at 1258 (internal citations omitted).  To proceed on a claim challenging the constitutionality of medical care, "[t]he facts alleged must do more than contend medical malpractice, misdiagnosis, accidents, [or] poor exercise of medical judgment." *Daniels v. Williams*, 474 U.S. 327, 330-33 (1986).

In addition, "to show the required subjective intent . . . , a plaintiff must demonstrate that the public official acted with an attitude of 'deliberate indifference' . . . which is in turn defined as requiring two separate things: 'aware[ness] of facts from which the inference could be drawn that a substantial risk of serious harm exists [and] . . . draw[ing] of the inference.'" *Taylor*, 221 F.3d at 1258 (internal citations omitted).  Thus, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (holding that defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference).  Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of

punishment." *Farmer*, 511 U.S. at 838.  When medical personnel attempt to diagnose and treat an inmate, the mere fact that the chosen "treatment was ineffectual . . . does not mean that those responsible for it were deliberately indifferent." *Massey v. Montgomery County Det. Facility*, 646 F. App'x 777, 780 (11th Cir. 2016).

> In articulating the scope of inmates' right to be free from deliberate indifference, . . . the Supreme Court has . . . emphasized that not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle,* 429 U.S. at 105, 97 S. Ct. at 291; *Mandel* [*v. Doe,* 888 F.2d 783, 787 (11th Cir. 1989)].  Medical treatment violates the eighth amendment only when it is "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Rogers*, 792 F.2d at 1058 (citation omitted).  Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S. Ct. at 292 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner."); *Mandel*, 888 F.2d at 787–88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference).  Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991).  "[A]s *Estelle* teaches, whether government actors should have employed additional diagnostic techniques or forms of treatment is a classic example of a matter for medical judgment and therefore not an appropriate basis for grounding liability under the Eighth Amendment." *Adams*, 61 F.3d at 1545 (citation and internal quotations omitted).  Additionally, the law is well settled that "[a] difference of opinion as to how a condition should be treated does not give rise to a constitutional violation." *Garvin v. Armstrong*, 236 F.3d 896, 898 (7th Cir. 2001);

*Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985) (holding that mere fact

an inmate desires a different mode of medical treatment does not amount to deliberate

indifference violative of the Constitution).

Nurse Giles submitted her affidavit and relevant medical records in response to the

complaint filed by Davis.[5]  Those portions of Nurse Giles' affidavit set forth herein are

corroborated by the objective medical records contemporaneously compiled during the

treatment process.   She addresses the allegation of deliberate indifference, in relevant

part, as follows:

> Mr. Davis arrived at Kilby Correctional Facility ("Kilby") in October of 2012. (COR002-7).  During an intake examination, the nursing staff noted significant skin grafts to Mr. Davis's side as a result of second degree burns he experienced over twenty (20) years earlier. (COR007).   Mr. Davis later explained to the medical staff that he was burned "all over [his] body" at the age of "2 years old." (COR017).  At the time of his arrival at Kilby, he reported to the medical staff utilizing "Eucerin Cream" for the scarring on his side and he received his own supply of Eucerin Cream to be kept on his person for use as needed. (COR0128-133).   When Mr. Davis later transferred from Kilby to Bibb Correctional Facility ("Bibb") on November 1, 2012, the medical staff even noted the scarring in the transfer screening form. (COR010).  In April of 2013, Mr. Davis submitted a sick call request form, specifically requesting, "burn cream." (COR041). When the medical staff saw Mr. Davis during sick call, they specifically noted a history of compromised skin and a 57-year history of treatment related to his prior burn injuries. (COR045).
>
> Even prior to Mr. Davis's arrival at Draper, he informed members of the Kilby medical staff during a February 3, 2014, appointment that, because of his history of burns, his "skin tears easily." (COR136).  Orders dated February 3, 2014, indicate that Mr. Davis continued to utilize A&D ointment, which is simply an ointment including Vitamins A, D and E which helps prevent infection of minor scrapes and burns, as of that date. (COR021, 135).

---

[5] Nurse Giles cites the medical records throughout her affidavit.  The citations set forth in the affidavit reference the page numbers assigned these documents by the medical care provider.

Mr. Davis transferred from Kilby to Draper Correctional Facility on or about February 21, 2014. (COR011, 139). At the time of his transfer, the Kilby medical staff noted that Mr. Davis continued to rely upon A&D ointment at the time of his transfer. (COR139).

. . . [A]fter his arrival at Draper [on February 21, 2014], I saw Mr. Davis during sick call on approximately six (6) occasions between February 25, 2014, and June 1, 2014. (COR061-76, 140, 142, 144-146). On these occasions when I saw Mr. Davis, my interactions with him were limited to the following: (a) reviewing his sick call request form, (b) summoning Mr. Davis to the health care unit for evaluation, (c) conducting an initial sick call examination to verify the nature of Mr. Davis's complaints as well as his overall condition, (d) confirm that Mr. Davis did not require any emergency medical services, and (e) either provide over-the-counter medications which could be provided without a physician's order, request an additional evaluation by a registered nurse on staff, or refer Mr. Davis for further evaluation by one of the site clinicians. As indicated through these sick call request documents (COR061–76, 140, 142, 144–146), I did not see Mr. Davis on April 1, 2014 [as he alleged in the complaint], with respect to his complaints regarding his pre-existing wound. Moreover, Mr. Davis was not even housed at Draper on April 1, 2014, because he had been transferred off-site for a court appearance on March 26, 2014, and did not return until April 2, 2014. (COR141).

Mr. Davis attended an appointment with one of the site clinicians on April 30, 2014, regarding his complaints of neck and back pain. (COR142). During the course of this appointment, Mr. Davis complained about the wound to his side and the clinician noted a "chronic scabbed wound with history of skin grafts," and instructed Mr. Davis to continue to utilize the A&D ointment provided to him and return to the clinic if his condition changed. (COR0142).

Though I reviewed a sick call request form completed by Mr. Davis on May 21, 2014, as part of the sick call triage process utilized to identify any medical emergencies that require immediate attention, I did not evaluate Mr. Davis when he was later summoned for sick call. (COR140). The evaluation was conducted by another member of the nursing staff. (COR140). One of the Staton clinicians saw Mr. Davis again on May 28, 2014, but Mr. Davis did not voice any complaints during this appointment related to the pre-existing wound on [his right] side. (COR142).

Doc. 9-1 at 7–9 (internal paragraph numbering omitted).

The medical records indicate that during a sick-call evaluation on May 30, 2014

Davis received one tube of Bacitracin, a topical antibiotic ointment, to keep on his person for use in treating his wound over the next seven days. Doc. 9-3 at 71. Nurse Giles "educated [Davis] to contact medical if symptoms develop or worsen" and Davis "demonstrate[d] an understanding of self-care, symptoms to report and when to return for follow-up care." Doc. 9-3 at 71. The parties agree that a Certified Registered Nurse Practitioner ("CRNP") also evaluated Davis during this sick-call appointment and approved the course of treatment undertaken at that time. Docs. 9-1 at 9 & 19.

The medical records demonstrate that Davis next submitted a sick-call request on June 3, 2014 in which he merely requested a refill of the "Vitamin A & D ointment cream for [his] body burns (3rd degree) and [a] refill on Naproxen 500 for . . . back pains." Doc. 9-3 at 72. Davis made no mention of any issues with the ointment provided to him on May 30, 2014 nor did he request treatment from medical personnel for the wound. Nurse K. Bailey assessed Davis the following day regarding his request for refills of his medication. Doc. 9-3 at 72.

Davis did not again seek treatment for his wound until June 17, 2014, several days after his supply of Bacitracin would have been depleted. Doc. 9-2 at 28. At this time, the attending CRNP noted signs of infection, diagnosed Davis with a "diabetic skin lesion" and admitted Davis to the health care unit for treatment. Doc. 9-2 at 28. On June 18, 2014, Dr. Marcial Mendez examined Davis, noted a "lesion to [his right] hip [with] minimal drainage [and] some sloughing" and ordered continued treatment of his wound in the health care unit. Doc. 9-2 at 33. On June 23, 2014, Dr. Mendez preformed a

follow-up evaluation and ordered Davis to be discharged from the health care unit with

instructions that Davis return to the unit twice daily for wound care. Doc. 9-3 at 35.

The affidavit of Nurse Giles continues as follows:

> It is clear from the events transpiring since May 30, 2014, that Mr. Davis's recurrent wound will likely require on-going care for the rest of his life. . . . By July 25, 2014, a clinician confirmed that Mr. Davis's wound continued to heal, though had not resolved as of that time. (COR034). As recently as September 17, 2014, Mr. Davis continues to receive on-going wound treatment related to his existing condition. (COR025, 037).
>
> In addition to the wound care for the scarring on his side, Mr. Davis has also received and continues to receive routine medical care for various chronic conditions including diabetes, hypertension and glaucoma (COR013). These chronic conditions, especially his diabetes, only work to hamper his circulation which typically slow[s] the healing of any wounds he experiences.
>
> I have reviewed the Complaint filed by Mr. Davis; however, I still do not understand the exact reason why Mr. Davis named me as a defendant in this case. I never refused to provide him with any medical evaluation or treatment of any kind. I did not interfere in any way with any medical treatment sought or received by Mr. Davis. On the occasions when I interacted with Mr. Davis, I listened to his complaints and attempted to address his complaints and concerns through the routine medical procedures and processes available to all inmates at Draper. I followed the directives of the higher ranking members of the medical staff regarding the care prescribed and provided to him, which were consistent with my training and experience as a licensed practical nurse. I absolutely deny that I ever mistreated Mr. Davis or failed to ensure that he received timely and appropriate medical attention for his complaints and concerns.

Doc. 9-1 at 10–11 (internal paragraph numbering omitted).

Under the circumstances of this case, the court concludes that the course of

treatment undertaken by Nurse Giles did not violate Davis' constitutional rights.

Specifically, there is no evidence upon which the court can conclude that Nurse Giles

acted in a manner that was "so grossly incompetent, inadequate, or excessive as to shock

the conscience or to be intolerable to the fundamental fairness." *Harris*, 941 F.2d at 1505. Rather, the evidence before the court demonstrates that Nurse Giles examined Davis regarding his complaint of a right-side wound and provided medication to Davis in an effort to treat his condition. Neither negligence in diagnosis or treatment nor medical malpractice constitute deliberate indifference actionable in a § 1983 case. *Farmer*, 511 U.S. at 836; *Taylor*, 221 F.3d at 1258; *Matthews*, 282 F. App'x at 771. Consequently, Davis' claim that Nurse Giles inadvertently chose an improper means of treatment for his condition does not "rise beyond negligence to the level of [deliberate indifference]." *Howell v. Evans*, 922 F.2d 712, 721 (11th Cir. 1991); *Hamm*, 774 F.2d at 1505 (holding that inmate's desire for some other form of medical treatment does not constitute deliberate indifference violative of the Constitution); *Franklin*, 662 F.2d at 1344 (holding that simple divergence of opinions between medical personnel and inmate-patient do not violate the Eighth Amendment).

As a result, the court concludes that the actions of Nurse Giles did not constitute deliberate indifference. Davis' self-serving assertion of deliberate indifference does not create a question of fact in the face of contradictory, contemporaneously created medical records. *Whitehead*, 403 F. App'x 401, 403 (11th Cir. 2010); *see Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment."); *Feliciano v. City of Miami Beach*, 707 F.3d 1244, 1253–54 (11th Cir. 2013)

(same).  Moreover, Davis has failed to present any evidence showing Nurse Giles knew that the manner in which she treated his condition created a substantial risk to his health and with this knowledge consciously disregarded the risk.  The record is therefore devoid of evidence—significantly probative or otherwise—showing that Nurse Giles acted with deliberate indifference to a serious medical need experienced by Davis.  Thus, summary judgment is due to be granted in favor of Nurse Giles.

## V.  CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1.      Nurse Turner be dismissed from this cause of action pursuant to Federal Rule of Civil Procedure 4(m) for lack of service of process.

2.      Defendant Giles' motion for summary judgment be GRANTED, with judgment issuing in favor of Defendant Giles.

3.      This case be DISMISSED with prejudice.

4.      The costs of this proceeding be taxed against the plaintiff.

It is further ORDERED that on or before **June 7, 2017** the parties may file objections to this Recommendation.   A party must specifically identify the factual findings and legal conclusions in the Recommendation to which the objection is made; frivolous, conclusive, or general objections will not be considered.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's Recommendation shall bar a party from a *de novo* determination by the District Court of factual findings and legal issues covered in the report and shall

"waive the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions" except upon grounds of plain error if necessary in the interests of justice. 11th Cir. R. 3-1; *see Resolution Trust Co. v. Hallmark Builders, Inc.*, 996 F.2d 1144, 1149 (11th Cir. 1993); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989).

    DONE on the 24th day of May, 2017.

                                                GRAY M. BORDEN
                                                UNITED STATES MAGISTRATE JUDGE